## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|                                              |   |                                      |
|----------------------------------------------|---|--------------------------------------|
|                                              | * |                                      |
| **Don Hamrick**                              | * |                                      |
| **5860 Wilburn Road**                        | * |                                      |
| **Wilburn AR   72179,**                      | * |                                      |
| **Plaintiff,**                               | * |                                      |
|                                              | * |                                      |
| **v.**                                       | * | **Case 1:07-cv-01726**               |
|                                              | * | **Honorable Rosemary M. Collyer**    |
|                                              | * |                                      |
| **Dr. Richard S. Hoffman,**                  | * |                                      |
|                                              | * |                                      |
| **Crowley Maritime Corp., and**             | * |                                      |
|                                              | * |                                      |
| **Seafarers International Union,**          | * |                                      |
| **Defendants.**                              | * |                                      |
|                                              | * |                                      |

---

### DEFENDANT SEAFARERS INTERNATIONAL UNION'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant Seafarers International Union, Atlantic, Gulf, Lakes, and Inland Waters District/NMU, AFL-CIO[1] (hereinafter "SIU" or "Union"), by and through undersigned counsel, hereby moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6).  In the alternative, Defendant SIU submits that summary judgment is appropriate pursuant to Fed R. Civ. P. 56, because there are no material facts in dispute and Defendant SIU is entitled to judgment as a matter of law. In support of this Motion,

---

[1] The Complaint refers to the defendant as "Seafarers International Union" the proper name of the defendant is "Seafarers International Union, Atlantic, Gulf, Lakes and Inland Waters District/NMU, AFL-CIO.

Defendant SIU respectfully refers the Court to the accompanying Memorandum of Points and Authorities in Support of Defendant's Motion, Statement of Material Facts and Proposed Order.

Respectfully submitted,

.                    _____/s/_____

Barbara Kraft  D. C. Bar No. 358563
Kraft Eisenmann Alden, PLLC
1001 Pennsylvania Ave., NW
Suite 600
Washington, DC  20004
Tel (202) 783-1391
Fax (202) 783-1392
bkraft@kea-law.com

Attorney for Defendant SIU

## CERTIFICATE OF SERVICE

I certify that  I have served a copy of the foregoing Motion to Dismiss or in the Alternative, for Summary Judgment, supporting Memorandum, Statement of Material Facts, proposed order and attachments on Don Hamrick, 5860 Wilburn Road, Wilburn, AR  72179; Dr. Richard S. Hoffman, MD, 142 West York Street, #518, Norfolk, VA 23510; and Crowley Maritime Corp. 9487 Regency Square Blvd. Jacksonville, FL 23510, by placing said document in an envelope with first-class postage affixed, and by depositing said envelope in U.S. mail, this 18th day of October 2007.

_____/s/_____

Barbara Kraft

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| Don Hamrick | * |
| 5860 Wilburn Road | * |
| Wilburn AR 72179 | * |
| Plaintiff, | * |
| | * |
| | * |
| v. | * |
| | * |
| Dr. Richard S. Hoffman, | * |
| | * |
| Crowley Maritime Corp., | * |
| | * |
| Seafarers International Union, | * |
| Defendants. | * |
| | * |

Case 1:07-cv-01726
Honorable Rosemary M. Collyer

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF THE DEFENDANT SEAFARERS INTERNATIONAL UNION'S**
**MOTION TO DISMISS, OR**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**I.**
**INTRODUCTION**

Defendant Seafarers International Union, Atlantic, Gulf, Lakes and Inland Waters District/NMU AFL-CIO[2] (hereinafter "SIU" or "Union") is a labor union that represents seafarers employed on U.S.- flag vessels that sail on the deep seas, the Great Lakes, and the inland waters of the United States. Statement of Material Facts Not In Dispute (hereinafter "SMF") ¶ 2.  SIU is signatory to collective bargaining agreements with shipping companies, including Marine Personnel and Provisioning, Inc. (hereinafter "Company").  These collective bargaining agreements establish the wages, hours and working conditions for seafarers employed on board these vessels. SMF ¶ 3.

---

[2] The Complaint refers to the defendant as "Seafarers International Union" the proper name of the defendant is "Seafarers International Union, Atlantic, Gulf, Lakes and Inland Waters District/NMU, AFL-CIO.

Plaintiff Don Hamrick has filed suit *pro se* against the Union, Dr. Richard S. Hoffman, and Crowley Maritime Corp., owner of the Charleston Express, based on events in connection with his employment as a seafarer onboard the Charleston Express. The Charleston Express was operated by the Company, and the Union's collective bargaining agreement was with the Company. However, the Complaint does not name the Company as a defendant.

The Complaint contains three claims against the Union. Specifically, the Complaint alleges: (1) that the Union breached its duty of fair representation; (2) that the Union breached its Constitution and/or the collective bargaining agreement when it allowed shipping companies to conduct pre-employment physicals while allowing them to provide in between-meal snacks to crewmembers; and (3) that plaintiff is "employing the Citizen's Arrest Warrant" as a means of forcing the Union to file an *Amicus Curiae* brief in support of his Second Amendment lawsuit seeking the right of seamen to bear arms.

As we show below, the Complaint fails to state claims against the Union upon which relief can be granted. Alternatively, because there are no material facts in dispute, the Court should grant summary judgment.

## II.

## FACTS

Plaintiff, a seaman, has worked for employers signatory to collective bargaining agreements with the SIU. SMF ¶ 1. He was referred by SIU's hiring hall for employment aboard the Charleston Express, a vessel operated by the Company. SMF ¶ 6. The Union and the Company have a collective bargaining agreement (CBA) which governs the

4

wages and working conditions of seaman on board the Charleston Express. SMF ¶ 3. The CBA requires pre-employment physical examinations for individuals that have been referred for employment. SMF ¶ 6.

On or about September 11, 2007, Plaintiff presented himself for a physical examination at the Norfolk, VA offices of Defendant Dr. Richard Hoffman. SMF ¶ 7. In accordance with routine procedure, his vitals (including a blood pressure reading) were initially taken by Dr. Hoffman's nurse. SMF ¶ 8. However, before he was seen by Dr. Hoffman, a Union representative came to Dr. Hoffman's office and informed the Plaintiff that the Company had instructed Plaintiff to go immediately to the vessel because the vessel's sailing time had been "moved up" three hours from 1:00 PM to 10:00 AM. SMF ¶ 10.

In accordance with the Company's direction, Plaintiff left Dr. Hoffman's office immediately to join the vessel in the port of Norfolk, Virginia. SMF ¶¶ 11 & 12. Based upon information and belief, Dr. Hoffman's office notified the Company that the Plaintiff's blood pressure was elevated. SMF ¶ 13. As a result, the Company contacted the vessel and requested that the Plaintiff's blood pressure be monitored. SMF ¶ 14. On board, the Plaintiff balked at the Company's attempt to take his blood pressure. SMF ¶ 15. However, he finally allowed them to take readings which revealed that his blood pressure remained high. SMF ¶¶ 15 & 16.

On September 19, 2007, the vessel arrived in Antwerp, Belgium. *Id.* The Company requested that Plaintiff be examined by a doctor. *Id.* Plaintiff refused to be seen by a physician, and the Company repatriated him to Norfolk as "Medically Unfit for Duty." SMF ¶ 17. Plaintiff was awarded his full pay and travel expenses. SMF ¶ 18.

During and upon his return from the voyage, the Plaintiff contacted the Union and complained about having his blood pressure checked. SMF ¶19. The Union contacted the Company on his behalf and, in an effort to resolve the dispute, asked the Company to pay him the contractual unearned wages until the end of the voyage and maintenance and cure benefits. The Company agreed to the Union's request. SMF ¶ 20.

On or about September 24, 2007, Plaintiff came to the Union hiring hall in Norfolk, Virginia. SMF ¶ 21. He spoke with Union Officials Georg Kenney and Kermett Mangram. SMF ¶ 22. Plaintiff told them he didn't want the Union to do anything for him because he would sue in federal court and file a charge with the National Labor Relations Board. SMF at ¶ 23.

Plaintiff returned to the Union hall two days later. Union representative Kenney asked him what he was looking for. SMF ¶¶ 24 & 25. Plaintiff said he wanted overtime pay for the duration of the Antwerp voyage. SMF ¶¶¶ 25, 26 & 27. Kenney agreed to pursue Plaintiff's request for the payment of "overtime" and base wages in the approximate amount of $7,000 gross. SMF ¶ 27.

After Kenney agreed to pursue Plaintiff's overtime request, but before he had an opportunity to contact the Company about it, Plaintiff submitted a written "counter-offer" that sought additional "relief" for the Antwerp voyage. SMF ¶ 28 and Ex. "A" attached to the Affidavit of Georg Kenny. Among other things, Plaintiff said he wanted a protocol for "waivers" of all pre-employment fit for duty examinations, the possible elimination of pre-employment examinations, and the Union's agreement to join in his Second Amendment lawsuit. *Id.*. Kenny was out of the office on September 27 and 28, 2007. He did not have an opportunity to discuss Plaintiff's additional requests with the Company.

6

SMF at ¶ 29.

The Union was served with this lawsuit on September 28, 2007.  On October 4, 2007 the plaintiff returned to the Norfolk hiring hall and filed another formal five page "Beef Report" (grievance) with the Union alleging, among other things, that the Union breached its duty of fair representation as a result of the events described above.  SMF ¶ 31.

The Union is still pursuing the Plaintiff's grievance with respect to his voyage on the Charleston Express. SMF ¶ 32.

### III.

### <u>ARGUMENT</u>

Defendant SIU moves to dismiss plaintiff's claim on the grounds that he has failed to allege facts sufficient to establish that the Union breached its duty of fair representation.   Furthermore, the Plaintiff has failed to exhaust his administrative remedies as required under the Labor Management Relations Act (LMRA). In addition, Plaintiff's claim that the Union unlawfully failed to file an *amicus* brief in his Second Amendment lawsuit must be dismissed for failure to state a claim.

A.    <u>Legal Principles Governing Motions to Dismiss Under FRCP Rule 12(b)(6)</u>

A district court may not dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, unless the movant shows  "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  For purposes of Rule 12(b)(6), the allegations of material fact in the complaint shall be taken as true and construed in the light most favorable to the non-moving party.   Moreover, where the pleadings are drafted by a *pro*

*se* plaintiff, they are held to a less stringent standard than pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, even a *pro se* plaintiff must state a claim upon which relief can be granted. See, Neal v. Snow, 484 F.Supp.2d 32 (D.D.C. 2006).

      **B.**      **Plaintiff Fails to State Any Claim against the SIU**

      The United States Supreme Court has repeatedly held that the interpretation and enforcement of collective bargaining agreements is exclusively governed by section 301 of the Labor Management Relations Act, 29 U.S.C.§ 185 ("LMRA"). *See* Vaca v. Sipes, 386 U.S. 171 (1967); Local 174 Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962); Textile Workers Union v. Lincoln Mills, 353 U.S. 448 (1957). As is clear from the facts in the Complaint, Plaintiff's claims against the Union stem from the collective bargaining agreement between the Union and the Company and construed most fairly to him, comprise a claim of breach of the  duty of fair representation.

      The Union owes to its members the duty of fair representation. Vaca, *supra.* This duty requires the Union "to serve the interest of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." DelCostello v. Teamsters, 462 U.S. 151 n.15 (1983).  Allegations that a union was careless or negligent do not establish a claim for breach of the duty; there must be substantial evidence of fraud, deceitful action or dishonest conduct. Amalgamated Ass'n of Street Employees v Lockridge, 403 U.S. 274, 299 (1971), *reh. denied*  404 U.S. 874 (1971); Int'l Union of Electrical Workers v. NLRB, 42 F.3d 1532 (D.C. Cir. 1994).

      The facts alleged in the Complaint, even if proven, would not create any liability

under this standard, because the facts do not support a finding of bad faith or fraud by the Union. Essentially, Plaintiff is complaining about the following conduct by the Union: (1) allowing pre-employment fit-for-duty examinations; (2) allowing the Company to monitor plaintiff's blood pressure; and (3) allowing the Company to serve between-meal snacks to crewmembers aboard their vessels. None of these complaints amounts to dishonest, deceitful, discriminatory or arbitrary conduct on behalf of the Union.

Rule 8(a) of the Federal Rules of Civil Procedure Rule requires a complaint to contain a statement showing that the pleader is entitled to relief, and a demand for judgment for the relief sought. When a plaintiff is not entitled to relief under any set of facts which could be proved to support his claim, a motion to dismiss under Rule 12(b)(6) must be granted. Here, Plaintiff is not entitled to any relief from the Union because the facts alleged in the Complaint are not sufficient to make out a claim for breach of the duty of fair representation. Even if those facts alleged are true, they do not state a claim for breach of the duty. For this reason, his breach of the duty of fair representation claim must be dismissed.

**C.    Plaintiff has not Exhausted his Administrative Remedies**

Plaintiff complained to the Union that Defendant Crowley wanted to monitor his blood pressure. Union representative Kenny thereafter spoke to the Company about Plaintiff's complaint. Exhibit A, Kenny Aff., para. 10. Less than a week later, Plaintiff was repatriated and deemed unfit for duty. On or about September 24, 2007, on his first visit to the Norfolk, VA union hall after his return, he first instructed the Union NOT to do anything because he was planning to file a federal lawsuit and charges with the National Labor Relations Board. Despite his instruction, Union representative Kenny

discussed Plaintiff's overtime claim with him and attempted to address his concerns.  A few days later, on September 28, 2007, before Kenny had the opportunity to speak with the Company about Plaintiff's complaint, the Union was served with the Complaint. Only after this suit was filed, did Plaintiff file a grievance under the CBA.

It is well-settled that an employee must attempt to exhaust the grievance and arbitration procedures established by the collective bargaining agreement before filing suit.  McCreary v. Potter, 273 F.Supp.2d 106 (D.C.D.C. 2003).  Accord: Republic Steel Corp. v. Maddox, 379 U.S. 650 (1965).  An employee is only relieved of this obligation if his attempt to exhaust such remedies would be futile.  Glover v. St. Louis-San Francisco Railway Co., 393 U.S. 324 (1969).   Nothing in the Complaint in the instant case indicates that it would have been futile for Plaintiff to file a grievance.  In fact, the opposite is true. The Union was in the process of pursuing his grievance when it was served with this lawsuit.  The Union continues to investigate Plaintiff's claims. Plaintiff on his own accord chose to circumvent the grievance procedure and go directly to federal court with his claim.  Considering Plaintiff's claims in the most positive light, his Complaint and lawsuit is premature at best.

Plaintiff's suit against the Union should be dismissed for failure to exhaust the grievance and arbitration procedures in the Collective Bargaining Agreement.

### D.  Plaintiff's Claim that the Union Failed to File an *Amicus* Brief In His Second Amendment Case Must be Dismissed.

While a non-party may bring to the Court's attention relevant information that may not have been raised by the parties in a litigation, nothing compels an entity or nonparty to file an Amicus Brief.  Plaintiff here is simply trying to coerce the Union to enter an appearance in lawsuits initiated by him which further his own interests, and

which are not related to the Union's representation of him and other employees covered by the CBA. There is no legal basis or precedent for Plaintiff's requiring the Union to file an *amicus* brief, or for his claim against the Union for failing to do so.

### E. The Court Should Grant Summary Judgment As to Plaintiff's Claims Against SIU

As the moving party, SIU must demonstrate that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court is to draw all inferences in favor of the party opposing summary judgment. Notwithstanding, the Court must determine whether the evidence must be submitted to the fact-finder, or "whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Here, SIU has filed a statement of material facts that are not in dispute. Those facts, together with the allegations in the Complaint that are assumed true, establish that Plaintiff's complaint against the Union is essentially a grievance about his working conditions that arose under the CBA. Plaintiff's own conduct confirms this, as he filed a grievance under the CBA grievance procedure in connection with his voyage aboard the Charleston Express a few days after he served the Union with his Complaint in this case. Moreover, Plaintiff's factual allegations, taken together with the exhibits to his Complaint and SIU's statement of material facts not in dispute and exhibits thereto, demonstrate that as a matter of law, the SIU has not breached its duty of fair representation with respect to the Plaintiff. Under these circumstances, summary judgment on Plaintiff's claims against SIU is appropriate.

## **CONCLUSION**

For all the reasons stated herein, SIU requests that the Court dismiss Plaintiff's Complaint in its entirety, or, in the alternative, enter summary judgment in favor of SIU on all his claims against SIU.

Dated: October 18, 2007                    Respectfully submitted,


                                           _____/S/_____
                                           Barbara Kraft
                                           Kraft Eisenmann Alden, PLLC
                                           1001 Pennsylvania Ave., NW
                                           Suite 600
                                           Washington, DC  20004
                                           Tel (202) 783-1391
                                           Fax (202) 783-1392
                                           bkraft@kea-law.com


                                           Attorney for Defendant SIU

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Don Hamrick** | * | |
| **5860 Wilburn Road** | * | |
| **Wilburn AR  72179** | * | |
|      **Plaintiff,** | * | |
| | * | |
| | * | **Case 1:07-cv-01726** |
| **v.** | * | **Honorable Rosemary M. Collyer** |
| | * | |
| **Dr. Richard S. Hoffman,** | * | |
| | * | |
| **Crowley Maritime Corp.,** | * | |
| | * | |
| **Seafarers International Union,** | * | |
|      **Defendants.** | * | |
| | * | |

**STATEMENT OF MATERIAL FACTS AS TO WHICH**
**THERE IS NO GENUINE ISSUE OF DISPUTE**

1. Don Hamrick is an employee who worked for employers signatory to collective bargaining agreements with the Seafarers International Union, Atlantic, Gulf, Lakes and Inland Waters District/NMU AFL-CIO. (hereinafter "SIU" or "Union") Affidavit of Georg Kenny (hereinafter "Kenny Aff") at ¶ 4.

2. Defendant SIU is a labor union that represents seafarers employed on U.S.-flag vessels that sail on the deep seas, the Great Lakes, and the inland waters of the United States. *Id* at ¶ 2.

3. The Union is signatory to a collective bargaining agreement with Marine Personnel and Provisioning, Inc. (hereinafter "Company") which establish the wages, hours and working conditions for seafarers employed on board the Charleston Express. *Id*. at ¶ 3 and Compl.Claim (3) (Plaintiff erroneously refers to the Company as Crowley Maritime Corp.).

4. Defendant Crowley Maritime Corp. owns the Charleston Express but it is operated by Marine Personnel and Provisioning. Kenny Aff at ¶ 3.

5. Defendant Dr. Richard Hoffman is a physician who performs fit for duty examinations. Compl. Claim (1)

6. Plaintiff Don Hamrick was referred by the Union for employment onboard the Charleston Express. The collective bargaining agreement requires individuals

referred to employment on the Charleston Express to submit to pre-employment fit for duty examinations. Kenny Aff at ¶¶ 3 & 4.

7. On September 11, 2007, the Plaintiff went to Dr. Hoffman's office for a fit for duty examination. *See* record entitled "Pre-Employment Physical Exam" contained in Plaintiff's bound addendum documents [white pages preceding the yellow pages.] (hereinafter "plaintiff's documents")

8. Before he saw the doctor, in accordance with standard practice, the nurse took his vitals including a blood pressure reading. *Id.*

9. The blood pressure reading indicated that his blood pressure was elevated. *Id.*

10. While Plaintiff was waiting to be examined by the doctor, a Union official came to the office and informed plaintiff that he was notified by the Company that the Charleston Express was leaving at 10:00 AM earlier than originally scheduled (I:00PM) and the plaintiff had to leave the doctor's office and report to the ship immediately. Kenny Aff at ¶ 6.

11. Dr. Hoffman never completed the full physical examination. *See* record entitled "Pre-employment Physical Exam" in plaintiff's documents

12. The Plaintiff arrived at the Charleston Express and embarked on the voyage. Kenny Aff at ¶ 7.

13. Shortly thereafter, the Doctor's office notified the Company of the elevated results of the plaintiff's blood pressure reading. Compl. Claim 1 and Memo dated September 11, 2007 from Don Hamrick contained in plaintiff's documents

14. The Company contacted the vessel and requested that the plaintiff have his blood pressure monitored. Compl. Claim (2) and Memo from Master dated September 12, 2007 contained in plaintiff's documents

15. The Plaintiff was disturbed and he initially refused. Shortly thereafter he agreed and his blood pressure was monitored. Memo entitled "Revised: Added New Paragraph 3 contained in plaintiff's documents and Kenny Aff at ¶ 10.

16. Since his blood pressure remained high, when the vessel reached port in Antwerp, Belgium on September 19, 2007, the Company requested that he be examined by a physician. Kenny Aff at ¶ 12.

17. The plaintiff refused and was repatriated to Norfolk, Virginia on September 19, 2007. *See* document entitled "Marine Personnel and Provisions Wage Voucher" contained in plaintiff's documents.

*18.* The Company paid plaintiff his earned wages and his travel expenses. *Id.*

19. During the voyage the plaintiff e-mailed the Union and complained among other things about having his blood pressure checked. *See* Memo entitled "Revised: Added new Paragraph 3." contained in plaintiff's documents.

20. The Union contacted the Company several times to discuss the dispute. The Company subsequently agreed to pay the plaintiff contractual unearned wages to the end of the voyage and maintenance and cure benefits. Kenny Aff at ¶¶ 10 & 13.

21. On September 24, 3007 the Plaintiff came to the Union's hiring hall in Norfolk Virginia. *Id* at ¶ 15.

22. Plaintiff spoke with Union officials Georg Kenny and Kermett Mangram. Plaintiff spoke about his intent to file a lawsuit and NLRB Charges against the Union, Crowley and Dr. Hoffman. *Id* at ¶ 16.

23. During the discussion, plaintiff said that he did not want anything from the SIU because he was going to sue in federal court and file a charge with the National Labor Relations Board. *Id* at ¶ 16.

24. On September 26, 2007 plaintiff returned to the Norfolk hall. Kenny informed him that the Union was pursuing his unearned wages and maintenance and cure benefits despite his comments about not wanting anything from the Union. *Id* at ¶ 17.

25. A lengthy conversation ensued and at some point Kenny asked the plaintiff what he was really looking for. Plaintiff explained that he thought he was entitled to maximum overtime wages for the entire voyage as well as unearned wages. *Id* at ¶ 18.

26. Kenny told the plaintiff that that it was not the norm but said hypothetically: "If I were able to persuade the company to compensate you for overtime labor for which you did not work - is this what you are looking for?" *Id* at ¶ 18.

27. The plaintiff responded affirmatively and Kenny said he would make the request to the Company. Based upon Kenny's estimation, the settlement would be approximately $7,000 before taxes and including base wages as well. *Id* at ¶¶ 18 & 19.

28. Approximately twenty minutes later, the plaintiff presented Kenny with a "counter-offer" which added additional conditions on the proposal. Among other things, the plaintiff now demanded a protocol for waivers of pre-employment fit for duty examinations, the possible elimination of fit for duty physicals and the Union's agreement to support the Plaintiff's Second Amendment lawsuit. *Id* at ¶ 20.

29. Kenny was out of the office on September 27th and 28th and did not contact the Company on the plaintiff's behalf. *Id* at ¶ 21.

30. On September 28, 2007 the Union was served with the instant Complaint. *See* Notice and Acknowledgement of Receipt of Summons and Complaint by Mail.

31. On October 4, 2007, the plaintiff returned to the Norfolk hiring hall and filed another formal five page "Beef Report" (grievance) with the Union alleging among other things that the Union breached its duty of fair representation arising from the same facts contained in the Complaint. Kenny Aff at ¶ 22.

32. The Union is currently processing the plaintiff's grievance arising from his employment aboard the Charleston Express. *Id* at ¶ 23.

Dated: October 18, 2007                    Respectfully submitted,


_____/S/_____
Barbara Kraft
Kraft Eisenmann Alden, PLLC
1001 Pennsylvania Ave., NW
Suite 600
Washington, DC  20004
Tel (202) 783-1391
Fax (202) 783-1392
bkraft@kea-law.com

Attorney for Defendant SIU

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|                                  |   |                                  |
|----------------------------------|---|----------------------------------|
| **Don Hamrick**                  | * |                                  |
| **5860 Wilburn Road**            | * |                                  |
| **Wilburn AR   72179**           | * |                                  |
| **Plaintiff**                    | * |                                  |
|                                  | * |                                  |
|                                  | * | **Case 1:07-cv-01726**           |
|                                  | * | **Honorable Rosemary M. Collyer**|
|                                  | * |                                  |
| **Dr. Richard S. Hoffman**       | * |                                  |
|                                  | * |                                  |
| **Crowley Maritime Corp.**       | * |                                  |
|                                  | * |                                  |
| **Seafarers International Union**| * |                                  |
| **Defendants**                   | * |                                  |
|                                  | * |                                  |

## ORDER GRANTING THE DEFENDANT SIU'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

This matter have been before this Honorable Court, by way of Defendant's

Seafarers International Union's Motion to Dismiss, or in the Alternative for Summary

Judgment and the Court having considered all papers submitted in support of and in

opposition thereto; and for good cause shown:

It is on this _____ day of _____, 2007 ORDERED that the Defendant's

Motion be granted and this case be dismissed.

_____
Honorable Judge Rosemary M. Collyer

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|                              |   |                              |
|------------------------------|---|------------------------------|
|                              | * |                              |
| **Don Hamrick**              | * |                              |
| **5860 Wilburn Road**        | * |                              |
| **Wilburn AR   72179**       | * |                              |
| **Plaintiff**                | * |                              |
|                              | * |                              |
|                              | * | **Case 1:07-cv-01726**       |
|                              | * | **Honorable Rosemary M. Collyer** |
|                              | * |                              |
| **Dr. Richard S. Hoffman**   | * |                              |
|                              | * |                              |
| **Crowley Maritime Corp.**   | * |                              |
|                              | * |                              |
| **Seafarers International Union** | * |                          |
| **Defendants**               | * |                              |
|                              | * |                              |

---

**AFFIDAVIT OF GEORG KENNY
IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS, OR
IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

State of Virginia          )
                           )ss
City of Norfolk            )

I, Georg Kenny, state as follows:

1.    I am of sound mind, capable of making this Affidavit and I have personal
      knowledge of the facts herein stated:

2.    I am currently employed as the Port Agent of the Seafarers International
      Union, Atlantic, Gulf, Lakes and Waters District/NMU AFL-CIO (hereinafter
      "Union"), the defendant in the above-captioned case.  I have held this position
      for approximately six years.  As the Port Agent, I am responsible for servicing
      the membership in the Port of Norfolk, Virginia. I am also responsible for
      processing grievances, negotiating and enforcing collective bargaining
      agreements, and referring individuals for employment with contracted

employers. The SIU represents employees who sail on U.S.-flag vessels on the deep seas, the Great Lakes and the inland waterways.

3.    The Union and Marine Personnel and Provisioning Inc. (hereinafter "Company") are signatory to a collective bargaining agreement which covers the employment practices on board the Charleston Express. The Charleston Express is operated by the Company but it is owned by Crowley Maritime Corp. The Agreement provides that individuals referred for employment on board the Charleston Express submit to a pre-employment fit for duty examination.

4.    I am very familiar with the plaintiff Don Hamrick. I have known him personally for several years. He has worked for employers who are signatory to collective bargaining agreements with the Union. In early September, 2007 he was referred by the Union for employment aboard the Charleston Express.

5.    In accordance with the Contract, on September 11, 2007 the plaintiff reported to the office of Dr. Richard Hoffman for a fit for duty examination.

6.    It is my understanding that after he arrived, but before he was examined by Dr. Hoffman, the nurse took his vitals including his blood pressure. While he was waiting, Sam Spain, a SIU representative from Norfolk arrived at the doctor's office and informed the plaintiff that the Company had called and he was required to report to the Charleston Express immediately because the ship's sailing time had been moved up from 1:00PM to 10:00AM.

7.    The plaintiff complied with the instructions and went immediately to the vessel.

8.      I have been informed that shortly thereafter, the Doctor's office contacted the Company and reported to them that the plaintiff's blood pressure was elevated.

9.      The Company contacted the vessel and requested that the plaintiff have his blood pressure monitored while on board.

10.      The plaintiff was upset and initially refused. He sent e-mails to the Union about the situation. When I saw his e-mails, I contacted the Company to discuss the situation.

11.      Eventually, the plaintiff allowed the Company to monitor his blood pressure aboard the vessel.

12.      His blood pressure remained high and the Company advised me that they were going to have him examined by a doctor when the vessel arrived in Antwerp, Belgium.

13.      I was informed by the Company that the plaintiff refused to see a doctor in Antwerp so the Company decided to repatriate him as Unfit for Duty. I told the Company that they would need to pay him his transportation, his unearned wages and maintenance and cure benefits.

14.      On September 19, 2007, the plaintiff was repatriated to the Port of Norfolk, Virginia.

15.      On September 24, 2007, the plaintiff came to the counter at the Union hall in Norfolk and told me that he wanted to speak with Union Vice President Kermett Mangram. I was present during the discussion. The plaintiff informed us of his impending litigation against Crowley, Dr. Hoffman and the Union. He gave Mangram copies of the pleadings to review.

16.    During the conversation, we asked the plaintiff what he wanted the Union to do. The plaintiff replied that he didn't want anything from the SIU and that the matter would be resolved at the NLRB and or in the courts.

17.    On September 26, 2007, the plaintiff came to the hiring hall again. I explained to him that I was still pursuing payments of his unearned wages as well as maintenance and cure benefits for him regardless of his comments that the Union "do nothing."

18.    A lengthy conversation ensued.  At some point, I became aware that the plaintiff was of the opinion that he was also entitled to maximum overtime wages, for the entire voyage, as well as the unearned wages.  I told him that such a recovery was not the norm in situations such as this.  However, it prompted me to ask him a hypothetical question. *"If I were able to persuade the Company to compensate you for overtime labor that you may or may not have actually worked, which they are not contractually obligated to pay, is this what you are looking for?"*  The plaintiff responded affirmatively.

19.    I told the plaintiff that I would make such a request of the Company. I believe that this would equal a payment in the amount of approximately $7,000 including base wages with no taxes withheld.

20.    Before I could pursue the matter further, within approximately 20 minutes, the plaintiff presented me with a written "counter-offer" Among other things; the plaintiff now demanded waivers of fit for duty examinations, the elimination of fit for duty examinations and the Union's support in his Second Amendment lawsuit. (Attached hereto as Exhibit "A" and incorporated herein by reference is a true and correct copy of the plaintiff's "counter-offer.")

21.    I was out of the office on September 27th and 28th and did not have the opportunity to contact the Company concerning the plaintiff's grievance.

22.    On October 4, 2007, the plaintiff returned to the Norfolk hiring hall and filed another formal grievance with the Union arising out of the same facts as discussed above and alleging that the Union breached its duty of fair representation. (Attached hereto as Exhibit "B" and incorporated herein by reference is a true and correct copy of the plaintiff's October 4, 2007 grievance.)

23.    I am in the process of pursuing the plaintiff's grievance arising from his employment aboard the Charleston Express.

_____
Georg Kenny

Sworn to and subscribed to before me by this Mr. Georg Kenny of the personal circumstances mentioned above, and personally known to me in Norfolk, Virginia, this

15 day of October, 2007

_____
Notary Public

```
JONATHAN H RICE
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES NOV. 30, 2008
COMMISSION # 339596
```

11-30-08
_____
My Commission Expires

OCT 0 1 2007

# DISCUSSION OF
# SETTLEMENT OFFER

BEEF

①

FROM: DON HAMRICK

TO: SEAFARERS
CCOWLEY
DR. HOFFMAN

Wednesday Sept. 26, 20

As per discussion with George Kenny, Port Agent, Norfolk SIU, George Kenny has proposed an offer of settlement and I hereby present my counter-offer.

SIU's OFFER:

• Crowley pays me full base wages plus full daily overtime that I would have earned during the remainder of the One-trip relief.

My Counter Offer

• The above offer is acceptable. However, I propose conditions before I accept the settlement offer

Conditions

① • Dr. Hoffman Crowley, and SIU agree to a Memorandum of Understand...

Exhibit "A"



or Breaches of Contract in regard to all future "Waivers of Pre-Employment Physical" that the Waivers will be honored on the basis that by such waiver the Company accepts all risks for the Waiver. If the Company Breaches such Waiver then the Company agrees to pay the employee all undeposed base wages plus all available uneavin overtime the employee would have earned had the company not Breached the Waiver.

• Dr. Hoffman will in the future, upon notification of a Waiver of the ~~Prelim~~ Pre-Employment Physical destroy the physical forms and not reveal or communicate the results of the physical to the company as the ~~Pre-em~~ Contract Law provides.

• ~~If the above is ao~~

• This same memorandum of understanding should be ~~made~~ made with all shipping companies with Pre-Employment Physicals.

(2) If the above is agreed to by all three parties then I will not drop my demand for $70 thousand in damages from my civil complaint in the U.S. District Court.

COMMENTARY: Then there is the legal matter on whether Pre-Employment Physicals are being used as an Unfair Labor Practice when there already exists the Union's annual physical or whether it violates the collective bargaining agreement of the membership with the Union.

And there is the matter of the Union's duty (if any) to assist a member defending constitutional rights and statutory rights of seamen in regard to the Second Amendment (i.e., small arms training at Piney Point as a pre-requisite for employment aboard U.S. government vessels, etc.) and the Seamen's Civil Law 28 USC § 1916 (statutory right of exemption from filing fees of all U.S. federal courts).

④

③. If the two conditions noted above are agreed to then I will not only drop the damages but I will drop Dr. Hoffman and Crowley from the lawsuit as defendants, leaving the SIU.

COMMENTARY: The remaining subject matter are whether the Pre-Employment Physicals being an unfair labor practice (NLRB jurisdiction or violates the Collective Bargaining Agreement and the SIU Constitution (federal courts jurisdiction).

The question is whether I want to pursue this without damages in light of the unions refusal to help me with Second Amendment rights and the Seamen's Suit Law (filing fee exemption) for the last 5 years.

• Final Condition. The Union agrees to assist me with my legal cases on the Second Amendment (i.e., Amicus Curaie Briefs, and with the Seamen's Suit Law (Amicus Curiae briefs).

If the Union agrees to assist me via Amicus Curiae Briefs (minimal assist as opposed to full legal representation by assigning an SIU attorney to represent me as being the maximum level of assistance) in my Second Amendment cases then I will withdraw by Motion to Dismiss my case against the SIU as I will consider the Union filling as performing its "duty of fair representation however belatedly it is.

Respectfully Submitted

DON HAMRICK

# BEEF REPORT

**(Please Print)**

MEMBER'S NAME: _Don Hamrick_     DATE: _Oct. 4 2007_

ADDRESS: _5860 Wilburn Rd., Wilburn AR 72179_

PHONE # _(501) 728-4238_     SS # _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_

BOOK # _H-1653_     RATING: _ABM_

_Don (Hamrick)_

VESSEL: _Charleston Express_

DATE ON: _Sept 11, 2007_     DATE OFF: _Sept 20, 2007_

PORT OF PAYOFF: _Norfolk_     DATE OF PAYOFF: _Sept. 20, 2007_

NAMES OF PATROLMEN AT PAYOFF: _____

NAME OF DEPARTMENT DELEGATE: _____

NAME OF SHIP'S DELEGATE: _____

NAME OF UNION REPRESENTATIVE
RECEIVING BEEF REPORT: _____

BEEF QUESTION: * _Did Crowley commit Breach of Contract and/or UNFAIR LABOR PRACTICE in regard to their waiver of Pre-Employment Physical by acting on information from the Incomplete Pre-Employment Physical and subsequently firing me as Not Fit For Duty due to high blood pressure._

_DUTY OF FAIR REPRESENTATION BY THE UNION_

① _Did SIU fail to fairly represent me in the Breach of Contract on the basis that the verbal agreement between Crowley and the Union constitutes a legally binding agreement (contract). Was it an unfair labor practice?_

SIGNATURE OF OFFICIAL

~~Did the SIU~~

→ _(Marine Transport Corp/Crowley)_

FORM NO. P-185

Ⓤ

**Exhibit "B"**

| SIU's History of Failure to Represent Me Fairly |     ② |
| and Section 8(b)(3) |

② Ⓢ Did the SIU / fail to bargain collectively under
section 8(d) with shipping companies and with the
U.S. Congress in regard to Second Amendment right
of seafarers (Union) members as prompted to do so by
my Second Amendment lawsuit against the U.S. Gov

③ Ⓜ Did the SIU refuse to represent me in the Breach
of Contract because of my 5-year litigious history
in the federal courts over Second Amendment
rights of U.S. Seamen in federal court cases
against the U.S. Govt?   Section 8(b)(1)(A) and
Section 8(b)(3)

Email from Houston SIU, Michael Russo asking
me to stop emailing him NLRB & lawsuit information
is construed by me as evidence of Habit and
Routine Practice (Federal Rules of Evidence)
of a general annoyance with "ME" AND Union members
taking an active role in protecting their
rights under the Collective Bargaining Agreement
and their rights under the U.S. Constitution
as it relates to the maritime industry (see
"Letters of Marque and Reprisal" clause under the
Congress power to declare War and the
"Common Defence" clause of the Preamble to
the U.S. Constitution.

③

(14) Does an individual seaman have the international human right and the legal right under the Bill of Right to the U.S. Constitution and the right through the SIU Constitution to litigate ~~seamen's rights~~ certain seamen's rights that are under ~~attack~~ direct attack by the United Nations and subsequently threatened by political indifference of ~~the~~ the SIU abdicating their obligation to protect ~~a~~ seamen's rights to armed self-defense by pirate attacks at sea (extreme example) through lobbying obligations with the U.S. Coast Guard and the UN's International Maritime Organization, hence the Second Amendment as an ~~a~~ international human right? I have ample law review articles advocating ~~this~~ this view. Moreover, the Seaman's ~~right~~ Second Amendment rights as proper subject matter for collective bargaining agreements with ALL shipping companies.



AS TO FIRING ME FOR
NOT FIT FOR DUTY
DUE TO HIGH BLOOD PRESSURE

Because the company breached their Waiver of their Pre-Employment Physical, and I was, by law released from my employee obligations. That includes any and all obligations to follow instructions derived from the Breach of Contract. This includes the Union's determination to place me on Not Fit For Duty Status derived from the same Breach of Contract. I should have been allow to ship ou

The Company and the Union therefore are mutuali liable for, damages from the Breach of Contract and violating the Collective Bargaining Agreement

Preliminary meeting with NLRB in Washington DC found the company Crowley not accountable under NLRB Jurisdiction but the U.S. District Court does have jurisdiction for the Breach of Contract.

The Union is subject to NLRB Jurisdiction for violation of unfair labor practices and failure to perform their Duty of Fair Representation.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| Don Hamrick | * |
| 5860 Wilburn Road | * |
| Wilburn AR   72179 | * |
|          Plaintiff | * |
|  | * |
|  | *    **Case 1:07-cv-01726** |
|  | *    **Honorable Rosemary M. Collyer** |
|  | * |
| Dr. Richard S. Hoffman | * |
|  | * |
| Crowley Maritime Corp. | * |
|  | * |
| Seafarers International Union | * |
|          Defendants | * |
|  | * |

**ORDER GRANTING THE DEFENDANT SIU'S MOTION TO DISMISS, OR**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

This matter have been before this Honorable Court, by way of Defendant's

Seafarers International Union's Motion to Dismiss, or in the Alternative for Summary

Judgment and the Court having considered all papers submitted in support of and in

opposition thereto; and for good cause shown:

It is on this _____ day of _____, 2007 ORDERED that the Defendant's

Motion be granted and this case be dismissed.


_____
Honorable Judge Rosemary M. Collyer