# In the U.S. District Court of the District of Columbia

333 Constitution Avenue, Washington, DC 20001

## No. 1:07-cv-1726, RMC

Don Hamrick, pro se
IN THE CAPACITY OF A
PRIVATE ATTORNEY GENERAL
5860 Wilburn Road
Wilburn, AR 72179
PLAINTIFF/APPELLANT

v.

Dr. Richard S. Hoffman, MD.
Crowley Maritime Corporation
Seafarers International Union
DEFENDANTS

29 U.S.C. § 185
29 U.S.C. § 158(a)(1)
29 U.S.C. § 187(a) & (b)

Let this be filed RMC Colly 11/26/07

# PLAINTIFF'S REBUTTAL TO HOFFMAN'S REBUTTAL TO PLAINTIFF'S OBJECTION TO MOTION TO DISMISS

## FEDERAL RULES OF CIVIL PROCEDURE
### RULE 5.1. CONSTITUTIONAL CHALLENGE TO A STATUTE NOTICE, CERTIFICATION, AND INTERVENTION

## FEDERAL QUESTIONS UNDER 28 U.S.C. § 1331

***RULE 5.1 CONSTITUIONALITY:***

"Does the HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA) violate (1) the privileges and immunities of Article IV, Section 2 of the U.S. Constitution and/or the privileges and immunities in Section 1 of the Fourteenth Amendment; and/or (2) the due process rights of the Fifth an Fourteenth Amendments; and/or (3) the "right to petition the Government for redress of grievances" of the First Amendment; and/or (4) the right to a civil jury trial under the Seventh Amendment?

***FEDERAL QUESTION - BROADLY:***

"Does HIPAA nullify Privacy Act protections for veterans working in the private sector?"

***FEDERAL QUESTION - NARROWLY:***

"Does a veteran working as an able seaman (a ward of the Admiralty) lose his Privacy Act right to sue because health and medical information was wrongfully disclosed by a private sector health care provider in a Maritime Union-Management employment scenario under HIPAA?"

RECEIVED

NOV 21 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# FEDERAL RULES OF CIVIL PROCEDURE
# RULE 5.1 CONSTITUTIONAL CHALLENGE TO A STATUTE
# "NOTICE, CERTIFICATION, AND INTERVENTION"

(a) **NOTICE BY A PARTY.** A party that files a pleading, written motion, **or other paper drawing into question the constitutionality of a federal or state statute must promptly**:

(1) **file a notice of constitutional question stating the question and identifying the paper that raises it**, if:

(A) **a federal statute is questioned and neither the United States nor any of its agencies, officers, or employees is a party in an official capacity**, or

(B) a state statute is questioned and neither the state nor any of its agencies, officers, or employees is a party in an official capacity; and

(2) **serve the notice and paper on the Attorney General of the United States if a federal statute is challenged**—or on the state attorney general if a state statute is challenged—**either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose**.

(b) **CERTIFICATION BY THE COURT**. The court must, under 28 U.S.C. § 2403, certify to the Attorney General of the United States that there is a constitutional challenge to a federal statute, or certify to the state attorney general that there is a constitutional challenge to a state statute.

(c) **INTERVENTION; FINAL DECISION ON THE MERITS**. Unless the court sets a later time, the attorney general may intervene within 60 days after the notice of constitutional question is filed or after the court certifies the challenge, whichever is earlier. Before the time to intervene expires, **the court may reject the constitutional challenge**, but may not enter a final judgment holding the statute unconstitutional.

(d) **NO FORFEITURE.** A party's failure to file and serve the notice, or the court's failure to certify, does not forfeit a constitutional claim or defense that is otherwise timely asserted.

In accordance with Rule 5.1(a)(1)(A) of the Federal Rules of Civil Procedure I hereby give NOTICE that I challenge the constitutionality of the *HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT* (HIPAA) codified under 42 U.S.C § 1320 et seq., under the Conflict of Laws Doctrine with *THE PRIVACY ACT* codified under 5 U.S.C. § 552a, et seq. The United States nor any of its agencies, officers, or employees are not partiy in an official capacity

In accordance with Rule 5.1(a)(2) this document with a NOTICE cover letter will be sent to the U.S. Attorney General by certified mail and by email at AskDOJ@usdoj.gov as per http://www.usdoj.gov/contact-us.html.

Under Rule 5.1(b) the Court must, under 28 U.S.C. § 2403, certify to the Attorney General of the United States that there is a constitutional challenge to HIPAA.

Under Rule 5(c) the Court may reject this constitutional challenge but I admonish the Court not to reject this challenge because to do so with this particular civil plaintiff, a seaman, such rejection will be viewed under the same light as the dismissals of this plaintiff's cases in this Court and in other Court as a continuing abandonment of seamen as wards of the Admiralty and obstructions of justice as acts of judicial bias and prejudice against seamen as unrepresented civil plaintiffs.

## CONFLICT OF LAWS BETWEEN HIPAA VERSUS THE PRIVACY ACT

The Court must note that I am a veteran of the U.S. Coast Guard (1974-1981).

Citing the Health Privacy Project's *MYTHS AND FACTS ABOUT THE HIPAA PRIVACY RULE - SOME COMMON MYTHS REGARDING THE RULE AND THE FACTS ABOUT WHAT THE LAW ACTUALLY SAYS:*[1]

> **Myth # 9: Patients can sue health care providers for not complying with the HIPAA Privacy Regulation.**
>
> The HIPAA Privacy Regulation does not give people the right to sue. Even if a person is the victim of an egregious violation of the HIPAA Privacy Rule, the law does not give people the right to sue. Instead, individuals must file a written complaint with the Secretary of Health and Human Services via the Office for Civil Rights. It is then within the Secretary's discretion to investigate the complaint. HHS may impose civil penalties ranging from $100 to $25,000, and criminal sanctions ranging from $50,000 to $250,000, with corresponding prison terms, may be enforced by the Department of Justice. However, since the law went into effect, HHS has focused on a complaint-driven process that relies on voluntary compliance with the law. **<u>So far, not one civil monetary penalty has been issued</u>.** §§ 160.306, 160.312 (a)(1), 160.304(b), 42 U.S.C § 1320 et seq.[2]

---

[1] http://www.healthprivacy.org/info-url_nocat2303/info-url_nocat_show.htm?doc_id=173435

t[2] Emphasis mine. http://www.healthprivacy.org/info-url_nocat2303/info-url_nocat_show.htm?doc_id=173435

However, health care providers such as Defendant Hoffman and shipping companies, such Crowley can be sued in federal court under ***WIRETAP ACT OF 1968*** and the federal ***STORED COMMUNICATIONS ACT OF 1986*** for wrongful disclosure of health information and medical records.[3] My case presents ***BREACH OF CONTRACT LAW*** as an additional remedy for wrongful disclosure of health information and medical records after a verbal agreement amounting to a *WAIVER OF THE PRE-EMPLOYMENT PHYSICAL* between Crowley and the Union that constitutes a binding and enforceable contract where I am the "Third Party Beneficiary" to said agreement (See Appendix A).

> Handlers of health information may be subject, however to a pair of related federal statutes that do provide rights to sue for individuals who have transmitted information electronically. A recent decision of the federal appeals court for the Ninth Circuit [(*Konop* v. *Hawaiian Airlines*, 236 F.3d 1035 (January 10, 2001)], interpreting the federal ***WIRETAP ACT OF 1968*** and the federal ***STORED COMMUNICATIONS ACT OF 1986***,[4] clears at least one obstacle to a right to sue for the invasion of electronically transmitted or stored health information.[5]

It is to be noted that the health and medical information that Dr. Hoffman's staff disclosed to Crowley was disclosed by telephone. Crowley, in turn, disclosed the same information to the master of the M/V Charleston Express by telephone, and subsequently by email via satellite communications.

## NO RIGHT TO SUE UNDER HIPAA

Monday, November 27, 2006
www.PatientPrivacyRights.org
http://www.patientprivacyrights.org/site/News2?page=NewsArticle&id=6641

Privacy Times - 11/06 - A federal appeals panel in New Orleans has ruled that the HIPAA medical privacy rules do not permit individuals to sue for violations. Margaret Acara filed suit against Dr. Bradley Banks for disclosing her medical information during a deposition without her consent. Most experts believe that the HIPAA rules do not provide for a private cause of action.

A three-member panel of the U.S. Court of Appeals for the Fifth Circuit noted that nine district courts have come to the same conclusion. The Fifth Circuit panel agreed in a Per Curiam opinion joined by Judges Harold R. DeMoss, Jr., Edward Charles Prado, and Carl E. Stewart.

---

[3] Title II of the Electronic Communications Privacy Act of 1986, P.L. 99-508, 100 Stat. 1868.

[4] Title II of the Electronic Communications Privacy Act of 1986, P.L. 99-508, 100 Stat. 1868.

[5] See Appendix B: *PRIVACY LAWSUITS BASED ON FEDERAL STATUTES PROTECTING ELECTRONIC DATA GENERALLY*

> "HIPAA does not contain any express language conferring privacy rights upon a specific class of individuals. Instead, it focuses on regulating persons that have access to individually identifiable medical information and who conduct certain electronic health care transactions."
>
> HIPAA provides both civil and criminal penalties for improper disclosures of medical information.
>
> However, HIPAA limits enforcement of the statute to the Secretary of Health and Human Services.
>
> Because HIPAA specifically delegates enforcement, there is a strong indication that Congress intended to preclude private enforcement," they wrote, citing the view that the "express provision of one method of enforcing [a statute] suggests Congress intended to preclude others." (*Margaret Acara* v. *Banks*: CA-5 No. 06-30356; Nov. 13.)
>
> To read the court's decision go to:
>
> http://caselaw.lp.findlaw.com/data2/circs/5th/0630356cv0p.pdf
>
> {*An appellate court decision shows why Congress should provide every American a private right of action if their medical privacy is violated. So far, nine district courts have determined that HIPAA does not grant citizens that right. Under HIPAA, all we have is the right to complain to a federal agency (the Office of Civil Rights in the Dept of Health and Human Services), which has been notoriously lax in protecting medical privacy. There have been only three convictions for identity theft out of over 20,000 complaints filed with OCR, and no other penalties or fines assessed for any other privacy violations.* ***Under the Privacy Act, veterans have long had a private right of action if their medical privacy is violated****;* [6] *every other American deserves the same. ~ Dr. Deborah Peel, Patient Privacy Rights*}

The present case is a prime example of why seamen are wards of the Admiralty. Shipping companies and unions are historically known to take notorious advantage of seamen. For this reason Congress passed the Seamen's Suit law, 28 U.S.C. § 1916, as a financial aid against the vast financial resources of shipping companies and unions in combination with bestowing special protections as wards of the Admiralty.

I presume the reference to veterans and the Privacy Act above applies to disputes between veterans and federal agencies, such as the Veterans Administration and VA hospitals. Hence the Privacy Act being codified in the U.S Code under *TITLE 5 GOVERNMENT ORGANIZATIONS AND EMPLOYEES* (5 U.S.C. § 552a, *et seq.*).

But what about disputes between veterans and the private sector? This is HIPAA's defect. It the bar to federal litigation making it a federal question under 28 U.S.C. § 1331.

---

[6] Emphasis mine.

To confirm HIPAA's defect I cite Peter A. Winn, *CONFIDENTIALITY IN CYPERSPACE: THE HIPAA PRIVACY RULES AND THE COMMON LAW*, 33 Rutgers L. J. 617, at 618 (Spring 2002):[7]

> The HIPAA Privacy Rules have been criticized for two important perceived shortcomings. First, the Rules create an administrative enforcement mechanism, but they do not create a federal private cause of action for individuals who are injured by a violation of the Rules. Second, the Rules only subject to legal sanction healthcare providers, health plans, and clearinghouses--what the Rules call "Covered Entities." [8] The Rules do not subject to legal sanction any of the numerous entities whose access to personal health information has exploded with the increased use of electronic health information--that is, businesses which provide legal, accounting, administrative, management, and oversight services to healthcare providers and health plans--what the Rules call "Business Associates" of covered entities.[9] This is considered particularly troubling because such business associates appear to have been responsible for many of the abuses of personal health information that led to the enactment of the Rules in the first place.

Respectfully,

Don Hamrick

CERTIFICATION:

Service not provided to government defense counsel because I cannot afford the cost. However, Plaintiff did email this document to all defendants.

Respectfully,

Don Hamrick

---

[7] http://www.epic.org/privacy/imshealth/winn_rutgers_02.pdf

[8] 45 C.F.R. § 160.103.

[9] 45 C.F.R. § 164.502(e).

## Appendix A.

# HIPAA's Lack of Private Right to Sue Not a Total Bar

Individuals may be able to bring third-party beneficiary actions or bring suit under state laws.

by Jackie Huchenski and Linda Abdel-Malek
The National Law Journal : June 19, 2000
http://www.healthlawtoday.com/hipaa/files/righttosue.htm
http://mosessinger.com/articles/files/hipaa_lack.pdf

AS MANY WHO HAVE followed developments in the proposed privacy rule implementing the privacy requirements of the Health Insurance Portability and Accountability Act (HIPAA) are aware, the U.S. Department of Health and Human Services, in promulgating the privacy rule, did not allow individuals a private right of action in order to enforce violations of the privacy rule.[10]

The reason was that Congress, in enacting the HIPAA statute in 1996, did not grant such authority to HHS. Pending finalization of the rule, however, health care lawyers should be aware that the lack of such a right may not entirely preclude individuals from bringing actions in cases in which identifiable health information has been disclosed, in violation either of HIPAA or of other state laws that directly or indirectly protect the privacy of such information.

In fact, HHS Secretary Donna E. Shalala, in an act that may have exceeded her authority, provided in the privacy rule that all contracts entered into between health care entities covered by the rule and their business partners must explicitly provide that individuals whose identifiable health information is disclosed under the contract are to be considered third-party beneficiaries of the contract. The potential liability faced by "covered entities"[11] and their "business partners"[12] does not end there; individuals may also be able to bring actions through their states' consumer protection laws, through state health care statutes that provide for a private right of action when violations of state law protecting health care information occur, and even through common-law theories of invasion of privacy and tort violations.

Although controversy surrounds the issue of HIPAA's third-party beneficiary provisions, as well as the notion that individuals may potentially seek redress in the courts in unprecedented numbers after finalization of the rule, it is important to keep in mind that the HIPAA privacy rule is not yet final and that, depending on the outcome, the result may be either an increase or a decrease in the rights of individuals under the rule. The lack of a private right of action in the privacy rule may have seemed at first blush a blessing for covered entities and their business partners by imposing one less obligation on them. However, the lack of clarity in the rule appears to have created the potential for a morass of judicial interpretation of various state laws.

---

[10] The privacy rule was proposed on Nov. 3, 1999, and generally is intended to protect Individually identifiable health information that is either transmitted or maintained electronically. The comment period for the rule closed on Feb. 17, and the rule is not yet final. See 64 Fed. Reg. 59918.

[11] A "covered" entity is defined in the HIPAA privacy rule to include health care providers, health plans and health care clearinghouses that transmit any health information in electronic form. See privacy rule at § 160.102. All citations to the privacy rule are intended to be to the proposed version of the rule.

[12] A "business partner" is defined in the rule as "a person to whom a covered entity discloses protected health information so that the person can carry out, assist with the performance of, or perform on behalf of. a function or activity for the covered entity. See § 164.504 of privacy rule.

**The secretary's explanation**

Secretary Shalala, in explaining her reasoning for not including a private right of action in the HIPAA privacy rule, stated:

"Only if we put the force of law behind our rhetoric can we expect people to have confidence that their health information is protected, and ensure that those holding health information will take their responsibilities seriously. In HIPAA, Congress did not provide such enforcement authority. There is no private right of action for individuals to enforce their rights, and we are concerned that the penalty structure does not reflect the importance of these privacy protections and the need to maintain individuals' trust in the system."[13]

Although acknowledging that Congress did not provide for a private right of action when enacting HIPAA in 1996, Secretary Shalala has arguably circumvented her lack of authority in creating such a right by mandating that all contracts between covered entities and their business partners include a provision stating that individuals whose protected health information[14] is disclosed under the contract are intended third-party beneficiaries of the contract.[15]

The rule further provides that covered entities must enter into such contracts with their business partners whenever such a disclosure is to be made, except in the limited circumstance in which the disclosure is made for purposes of a referral or consultation for treatment. The obligation to enter into a contract ostensibly will cover the majority of disclosures of protected health information that a covered entity might make to its business partners and, given the fact that most states allow intended third-party beneficiaries to recover for violations of contracts, the universe of potential liability could be great.

**Third-party beneficiary law**

Pursuant to the Restatement (2d) of Contracts, the rights of third-party beneficiaries are determined based on a test of intent to benefit. Essentially, an "intended" beneficiary acquires rights under a contract if the contract recognizes that a right to performance in the beneficiary is appropriate in order to effectuate the parties' intent, and either the performance of the contract will satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.[16] An "incidental" beneficiary acquires no such right, and under the Restatement, only an "intended" beneficiary may bring an action to enforce the contract.[17]

The majority of jurisdictions have adopted the Restatement's intent test, and courts have interpreted the test with varying degrees of stringency. The general rule among jurisdictions that have adopted the Restatement's test appears to be that if the parties to the contract make an express statement that the third party is an intended beneficiary, the third party has an enforceable right under the contract.[18] Additionally, the identity of the third-party beneficiary need not be specifically set forth in the contract in order for the parties to

---

13 64 Fed. Reg. at 59924.

14 "Protected Health Information" is defined in the rule as "individually identifiable health information that is or has been electronically transmitted or electronically maintained by a covered entity and includes such information in any other form." Id.

15 Privacy rule at § 164.506(e)(2)(ii)(A).

16 See Restatement (2d) Contracts, § 302 and ac companying comments.

17 Id. at §~ 302, 315.

18 See. e.g., Moosehead Sanitary District v. S.G. Phillips Corp., 610 F.2d 49 (1st Cir. 1979); Ridgway v. Ford Dealer Computer Service Inc., 114 F.3d 94 (6th Cir. 1997); cf Denman v. Peoples Heritage Bank Inc.. 704 A.2d 411 (S. Ct. Me. 1997).

have intended a benefit; the intent to benefit a third party generally is all that needs to be expressed in the contract in order to give an individual the benefit of performance.[19]

Presumably, then, the fact that HIPAA requires contracts between covered entities and their business partners to explicitly state that "individuals whose protected health information is disclosed are intended beneficiaries of the contract"[20] will make it more likely courts will find that affected individuals have standing to bring an action under the contract.

The question of how an individual who is not identified as a beneficiary would even be made aware that his or her information has been disclosed in violation of a contract is answered in the HIPAA privacy rule itself: The rule provides individuals with the right to an accounting of how their protected health information has been disclosed by a covered entity.[21] The liability of a covered entity, as compared with a business partner, for violations of. the rule is an area of some concern already. It should be an area of increased concern in the context of third-party beneficiary actions because, although a third-party beneficiary would ostensibly sue a business partner for breach of contract, such a business partner may try to seek indemnification from the covered entity.

**Is state law pre-empted?**

The HIPAA privacy rule generally preempts state laws that are contrary to its provisions, except in certain circumstances, including if the state law at issue is more stringent than the HIPAA privacy rule. Secretary Shalala mandated a five-part test in the privacy rule in order for an entity to determine whether a particular state law has been pre-empted by the rule.[22] As part of this five-part test, the secretary has said, a state law is "more stringent than" the privacy rule, and therefore not pre-empted, if the state law provides greater penalties for violations.[23] Taken to its natural conclusion, then, a state law, that provides for a private right of action in cases in which identifiable health information about an individual is disclosed in violation of the state statute would likely not be preempted by the HIPAA privacy rule. The secretary pointed out in the HIPAA privacy rule that all states recognize in tort law a common-law or statutory right to privacy.[24] Additionally, most states recognize a common-law duty of confidentiality with respect to health care providers-one type of covered entity. [25]16 Courts have generally allowed recovery under a variety of common-law theories if such confidentiality is breached by a provider of care, Including the breach-of-confidentiality tort, invasion of privacy and breach of fiduciary duty.[26]

Most recently, the New York Supreme Court, Appellate Division, found a similar common-law right in an action by an individual against a health maintenance organization for the disclosure of information from her patient file by an employee of the HMO. Although no private right of action was authorized under the statutes which were allegedly violated, the court found that as a policy matter, the statutes imposed a duty of confidentiality between a health plan, acting through its employee, and its patients, and that such a duty

---

[19] See Finch. Pruyn & Co. Inc. v. M. Wilson Control Service Inc.. 658 N.Y.S. 2d 496 (App. Div. 3d Dept. 1997) (it is sufficient for the third party to be identifiable as beneficiary of promised performance); see also Restatement (2d) of Contracts, §302(2).

[20] Privacy rule at § 164.506(e)(2)(ii)(A).

[21] Id. at § 164.515.

[22] Id. at § 160.203.

[23] Id. at § 160.202.

[24] 64 Fed. Reg. at 60008.

[25] See Lawrence Gostin, "Health Information Privacy." 80 Cornell L. Rev. 451, 508 (1995).

[26] Id.

implied a "covenant of trust and confidence that is inherent In the physician-patient relationship, the breach of which Is actionable as a tort." [27]

Some states allow patients who have been harmed by unauthorized disclosures of their health care information the right to recover damages in a civil proceeding pursuant to state statutes.[28] For example, California allows for limited compensatory and punitive damages upon violation of its Confidentiality of Medical Information Act, which requires health care providers and employers to obtain written authorization from patients before releasing identifiable health information.[29] Montana and Wyoming allow plaintiffs to recover reasonable attorney fees and actual costs of litigation.[30] Maryland, Texas and Washington allow for a recovery of actual damages when an individual's health information is disclosed in violation of state statute.[31] Finally, the New York; State Assembly has proposed a bill, the Health Information Privacy Act, which would add an article to the state's Public Health. Law creating a private cause of action for the misuse of identifiable health information. Specifically, the proposed law would impose criminal penalties and civil liability including, in the court's discretion, injunctions, compensatory damages, punitive damages and attorney fees and costs.[32]

**Consumer protection laws**

All 50 states have some form of consumer protection statute, commonly referred to as Unfair and Deceptive Acts and Practices (UDAP) statutes.[33] Even when such statutes detail specific prohibited practices, they often also prohibit other unfair or deceptive practices more generally, and almost all such statutes authorize a private cause of action for violations.[34] The violation of another state or federal statute may be considered a per se violation of a state's UDAP statute in many states. An argument can be made that these statutes provide individuals with a private right of action for violations of the HIPAA privacy rule.

For example, state and federal laws meant to protect the public often incorporate UDAP remedies. However, even violation of a statute that does not create any private right of action can be the basis for a UDAP claim. In Yale New Haven Hospital v. Mitchell,[35] the Connecticut Superior Court ruled that plaintiffs had standing to sue under the protections of the Hill-Burton Act, which was intended by Congress to protect the rights of indigent individuals, regardless of the fact that Congress had not expressly created a private right of action in the statute. The court reasoned that because the purpose of the law was to protect the public good, and because Congress had not expressed any intent to deny such a remedy, then a private cause of action could be brought under Connecticut's Unfair Trade Practices Act for violations of the Hill-Burton Act.

The same could be said about Congress in the context of HIPAA. Additional state laws creating a per se private cause of action for violations of other state or federal laws include California, Massachusetts, Missouri and Mississippi.[36] Even in the absence of specific UDAP statutes or regulations that allow for a per se

---

[27] Jane Doe v. Community Health Plan-Kaiser Corp.. No. 85529, 2000 N.Y. App. Div. Lexis 5498 (N.Y. App. Div. 3d Dept., May 11. 2000).

[28] See generally, L. Dahm, 50 State Survey on Patient Health Care Record Confidentiality, American Health Lawyers Association, June 1999.

[29] See Cal. Civ. Code § 56. et seq. (2000).

[30] See Mont. Code Ann. § 50-16-553 (1999); Wyo. Stat. Ann. § 35-2-616 (2000).

[31] See Md. Ann., Health-General § 4-309 (1999); Tex. Health & Safety Code Ann. § 241.156 (2000); Wash. Rev. Code § 70.02.170(2000).

[32] See New York state A.B. 4473, Feb. 10, 1999.

[33] See generally. Unfair and Deceptive Acts and Practices (4th ed), National Consumer Law Center.

[34] Id.

[35] 683 a.2D 1362 (Conn. Supre. Ct. 1995).

[36] See Cal. Bus. & Prof. Code §17.200 (2000); Code Mass. Reg. tit. 940, § 3.16; Mo. Code Regs. tit. 15, § 60-8.090 (2000); Code of Miss. Rules, § 24-000-0002, Rule 12 (2000).

private right of action, courts in New York and North Carolina have found such a right of action for violations of other statutes.[37] This per se approach has been rejected by a few states, such as Kentucky. Illinois and Ohio, whose courts have held that there is no UDAP violation if the federal or state statute in question does not provide a private right of action.[38]

**Considerations for counsel**

Health care attorneys should become familiar with the HIPAA privacy rule, which is scheduled to become final sometime this year, and should also consider the following in attempting to assist their clients regarding the potential impact of the rule:

Contract drafting regarding third-party beneficiaries. Attorneys for covered entities should consider drafting contract provisions to limit liability of their clients to the extent possible. Conversely, attorneys for business partners need to consider ways to limit their clients' exposure as well, perhaps through indemnification clauses with respect to liability that results from occurrences not caused by the business partner. Even in the context of attempts to limit such liability on both sides, an additional problem is posed regarding whether existing insurance coverage is even adequate to take such potential liability into account, and entities will need to check their liability coverage.

Increased litigation. Although the privacy rule allows the secretary to take action on behalf of whistleblowers, the potential litigation involved with such action pales in comparison with the number of actions that are likely to be brought by individuals through third-party beneficiary actions, UDAP claims or enforcement of state health laws protecting medical record privacy. Attorneys should become aware of the state UDAP statutes and health laws affecting the jurisdiction in which they practice and should advise their clients accordingly.

Regardless of how the debate taking place on these issues is resolved, one thing is certain: it is vital for legal practitioners in the health care field to stay abreast of any developments in this arena. Ms. Huchenski is a partner at New York's Moses & Singer L.L.P. and co-chair of the firm's e-health law practice. Ms. AbdelMalek is an associate in the firm's health care practice group.

---

[37] See, e.g., In re Scrimphser, 17. B.R. 999 (Bankr. N.D.N.Y. 1982); Stanley v. Moore, 454 S.E.2d 255 (N.C. 1995).

[38] See Miles v. Shauntee, 664 S.W.2d 512 (Ky. 1983); reh'g denied (Feb. 16, 1984); Area v. Colonial Bank & Trust Co., 637 N.E.2D 687 (Ill. App. 1994); reh'g denied (Aug. 5, 1994); Celebrezze v. Fred Godard Ford,, 500 N.E.2D 881 (Ohio Ct. App. 1985).

## Appendix B.

### PRIVACY LAWSUITS BASED ON FEDERAL STATUTES PROTECTING ELECTRONIC DATA GENERALLY

by: David Rabinowitz
As published in the March 28, 2001 issue in iHealthcare Weekly
http://mosessinger.com/articles/files/electronic_communications.htm

The revised Health Insurance Portability and Accountability Act Privacy Rule issued by the Department of Health and Human Services expanded the scope of protected information from electronically stored or transmitted information to information regardless of medium. The revised regulations still do not and, under HIPAA, could not, create a private cause of action on behalf of individuals whose information is used or disclosed in violation of those regulations. This limitation substantially mitigates the potential impact of the regulations on the health industry and its liability insurers.

Handlers of health information may be subject, however to a pair of related federal statutes that do provide rights to sue for individuals who have transmitted information electronically. A recent decision of the federal appeals court for the Ninth Circuit (*Konop* v. *Hawaiian Airlines* [39]), interpreting the federal ***WIRETAP ACT OF 1968*** and the federal ***STORED COMMUNICATIONS ACT OF 1986***,[40] clears at least one obstacle to a right to sue for the invasion of electronically transmitted or stored health information.

The case arose in a context far from medical records. Konop, the plaintiff (who represented himself), was a pilot with Hawaiian Airlines. He maintained a website where he criticized management and also criticized the pilot's union for being too compliant with management.

What made the case a privacy case is that the website was private. Access was given only to certain airline employees, and not to managers or union officials. In addition, to obtain a password to access the website, employees had to agree not to disclose its contents.

The airline nevertheless obtained access to the website, apparently by using pilots' passwords. What the airline found on the website allegedly caused it to suspend Konop in retaliation.

Konop retaliated in turn with a lawsuit alleging a number of wrongs, including claims under the Wiretap Act and the Stored Communications Act.[41] **Both the Wiretap Act and the Stored Communications Act give individuals the right to sue**. The Wiretap Act gives a right to sue to any person whose electronic communication is intentionally intercepted, disclosed or used, unless the interception is one of the kinds permitted by the Act.[42] The Stored Communications Act gives a right to sue to any person "aggrieved" by a knowing or intentional obtaining of access, either without or in excess of authorization, to information electronically stored by a facility through which an electronic communication service is provided.[43] An "electronic communication" under both statutes is defined, with some exceptions, as any electronic transfer of information that affects interstate commerce.[44] Damages under both acts includes the actual damages suffered by the plaintiff and any profits made by the defendant. A successful plaintiff can receive counsel fees.

---

[39] 236 F.3d 1035 (January 10, 2001).

[40] Title II of the Electronic Communications Privacy Act of 1986, P.L. 99-508, 100 Stat. 1868.

[41] 18 U.S.C. §2701 et seq.

[42] 18 U.S.C. §2520(a).

[43] 18 U.S.C. §18 U.S.C. §2701(a), 2707(a).

[44] 18 U.S.C. §2510(12).

Successful plaintiffs under the Wiretap Act receive a minimum of $10,000 in damages, while the minimum under the Stored Communications Act is $1,000.[45]

What the Konop case established is that both Acts protect not only electronic transmissions of information, but also protect the transmitted information when it is stored electronically. Reversing a dismissal in the court below, the appeals court held that Konop had stated a claim under both statutes. Under the Wiretap Act, the issue that the Court addressed was whether the interception had to take place while the electronic communication was taking place, or whether access to the communication after the communication was stored was sufficient. While criticizing the Wiretap Act as unclear, the Court at length concluded that accessing the stored communication constituted interception. The Court had little trouble finding that a claim was stated under the Stored Communications Act.

There are a number of possible barriers to liability under both of these Acts, as against typical institutions in the health industry. First is the question of whether such institutions and their computers and other electronic data storage and transmission facilities constitute an "electronic communications service", such that their stored communications of health information would be subject to the Stored Communications Act. "Electronic communication service" is defined, in substance, as any service that gives users the ability to send or receive electronic communications.[46] At least one case has expressed skepticism that a company engaged in a primary business other than that of communications transmission is such a service or facility.[47] If the construction suggested in that case were generally adopted (there is not yet enough case law to know whether this will happen), it would probably protect most health insurers, hospitals, doctors and the like. It might not, however, immunize entities that offer information transmission services as one of their primary businesses - clearinghouses, for example.

Second, the recipient of an electronic communication may "intercept" the communication under the Wiretap Act, or obtain access to the stored communication under the Stored Communications Act.[48] Thus, a provider, for example, is not restricted by these Acts from accessing information sent to it. However, the intended recipient may not disclose the information without "the lawful consent" of the transmitter.[49] Thus, information disclosed beyond any consent given by a patient, for example, might still give rise to a claim under the Stored Communications Act, despite the absence of a right to sue under the HIPAA Privacy Rule mandating the consent in the first place. Which statute would prevail? Since the claim would arise under an Act other than HIPAA, the answer would appear to be that a right to sue would exist.

Firm answers are yet to be given to these questions. They do suggest, however, that regardless of the absence of a right to sue under HIPAA regulations, and despite the condition of state privacy law in your institution's state,[50] a federal claim for invasion of the privacy of electronically transmitted or stored information, including health information, is taking shape.

---

[45] 18 U.S.C. §18 U.S.C. §§2520(c)(2), 2707(c).

[46] 18 U.S.C. §2510(15).

[47] State Wide Photocopy, Corp. v. Tokai Financial Services, Inc., 909 F. Supp. 137, 145 (S.D.N.Y. 1995).

[48] 18 U.S.C. §2701(c)(2).

[49] 18 U.S.C. §§2511(3)(b)(ii), 2701(c)(2), 2702(b)(3).

[50] Some states may provide an explicit cause of action for breach of privacy of medical information (e.g., see e.g. N.J. Stat. 17.23A-20). These state laws would not be preempted by the HIPAA Privacy Rule.