UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DON HAMRICK, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 07-1726 (RMC) |
| DR. RICHARD S. HOFFMAN, *et al.*, | ) |
| Defendants. | ) |

<u>MEMORANDUM OPINION</u>

Plaintiff Don Hamrick, proceeding *pro se*, complains that Defendant Crowley Maritime Corporation ("Crowley") waived the normal requirement that he undergo a pre-employment physical examination but that Defendant Dr. Richard S. Hoffman reported to Crowley that Mr. Hamrick had high blood pressure despite the waiver; that Crowley thereafter discharged him as unfit for duty; and that Defendant Seafarers International Union, Atlantic, Gulf, Lakes and Inland Waters District/NMU, AFL-CIO ("Seafarers" or "Union"), failed to represent him properly concerning his discharge. All three Defendants have filed motions to dismiss or, in the alternative, for summary judgment, which are now ripe for decision [Dkt. ## 8, 9 & 10]. With his opposition [Dkt. # 16], Mr. Hamrick filed a copy of a petition for certiorari to the Supreme Court on a case he filed in the Eighth Circuit. When Crowley objected, Mr. Hamrick filed a "rebuttal" and motion for recusal [Dkt. # 19].

I. BACKGROUND

Mr. Hamrick is a seaman, who was referred by the Union's hiring hall for employment aboard the Charleston Express, a vessel owned by Crowley and operated by Marine

Personnel and Provisioning, Inc. (the "Company"). The Union is signatory to collective bargaining agreements ("CBA") with various shipping companies, including the Company. The CBA sets the terms and conditions of employment for seamen employed on U.S.-flag vessels that sail the deep seas, the Great Lakes, and the inland waters of the United States.[1] The Company itself is not sued. The CBA between the Union and the Company requires pre-employment physical examinations. As a result, on or about September 11, 2007, Mr. Hamrick presented himself for a physical at the Norfolk, Virginia offices of Dr. Richard S. Hoffman. As is routine, a nurse first checked his vital signs, including his blood pressure. At that point, a Union representative arrived and informed Mr. Hamrick that the Company had instructed him to report immediately to the Charleston Express because it was leaving earlier than originally scheduled. Mr. Hamrick left as instructed without ever seeing Dr. Hoffman. However, Dr. Hoffman's office contacted the Company and notified it that Mr. Hamrick's blood pressure was elevated. The Company contacted the Charleston Express and directed that Mr. Hamrick's blood pressure be monitored during the voyage. Although Mr. Hamrick initially resisted, he eventually submitted to testing, which revealed that his blood pressure remained high.

The Charleston Express arrived in Antwerp, Belgium, on September 19, 2007. The Company asked Mr. Hamrick to be examined by a physician. When he refused, the Company brought him back to Norfolk as "Medically Unfit for Duty." Mr. Hamrick was paid his full pay for the one-way trip and travel expenses.

Mr. Hamrick complained to the Union during the voyage and upon his return about

---

[1] It is unclear whether the Company is ultimately a subsidiary of Crowley, which is a holding company with many subsidiaries.

having his blood pressure checked. In an effort to resolve the dispute, the Union obtained the Company's agreement to pay Mr. Hamrick his unearned wages until the end of the voyage as well as maintenance and cure benefits. Dissatisfied, Mr. Hamrick visited the Union hiring hall on September 24, 2007, and told Union officials that he did not want the Union to do anything for him because he would sue in federal court instead and file a charge with the National Labor Relations Board. Two days later, he returned and told Union representatives that he wanted overtime pay for the duration of the voyage to Antwerp. The Union agreed to pursue this request with the Company. A few hours later, Mr. Hamrick submitted a written "counter-offer" that sought additional relief. In particular, Mr. Hamrick said that he wanted a protocol for "waivers" of all pre-employment fit-for-duty physical examinations, the possible elimination of these pre-employment exams, and the Union's agreement to join in his Second Amendment lawsuit.[2]

On October 4, 2007, Mr. Hamrick filed a five-page grievance with the Union. The Union states that it is still pursuing Mr. Hamrick's grievance with respect to the voyage to Antwerp. *See* Seafarers' Mem. in Supp. of Mot. to Dismiss ("Seafarers' Mem."), Statement of Material Facts ¶ 32.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(2)

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

---

[2] *See Hamrick v. United Nations*, Civil Action No. 07-1616 (D.D.C. filed Sept. 10, 2007).

The plaintiff must allege specific acts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). Bare allegations and conclusory statements are insufficient. *Id.*

In determining whether a factual basis for personal jurisdiction exists, the court should resolve factual discrepancies appearing in the record in favor of the plaintiff. *Crane*, 894 F.2d at 456. The court need not treat all of the plaintiff's allegations as true, however. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). Instead, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.*

### B.     Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor, *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003), and the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965. But the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235, 242

(D.C. Cir. 2002). In deciding a 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). However, the Court may, in its discretion, consider matters outside the pleadings and thereby convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

### III. MOTION FOR RECUSAL

Mr. Hamrick has two cases pending before this Court: the instant matter and *Hamrick v. United Nations*, Civil Action No. 07-1616 (D.D.C. filed Sept. 10, 2007). The latter case asserts rights under the Second Amendment to the U.S. Constitution for seamen to carry arms and rights to litigate in U.S. courts without paying filing fees under 28 U.S.C. § 1916. That section of the U.S. Code provides:

> In all courts of the United States, seamen may institute and prosecute suits and appeals in their own names and for their own benefit *for wages or salvage or the enforcement of laws enacted for their health or safety* without prepaying fees or costs or furnishing security therefor.

28 U.S.C. § 1916 (emphasis added). This provision applies to only those seamen who were, at the time of the injury, employed by the party being sued. *Walsh v. Marine Navigation Co.*, 34 F.R.D. 25, 27 (S.D.N.Y. 1963). It provides no rights against the United States. *Howard v. United States*, 2006 WL 3431219, at *3 (Fed. Cl. Nov. 20, 2006).[3] In unrelated litigation instituted by Mr. Hamrick

---

[3] It also provides no rights against private persons who are (1) not a seaman's employer; and who (2) paid all wages, grated salvage rights, and complied with all seaman health and safety laws.

elsewhere, courts, including the United States Supreme Court, have required Mr. Hamrick to pay filing fees.  *See, e.g.*, *Hamrick v. Bush*, 543 U.S. 1185 (2005); *Hamrick v. Bush*, 2005 U.S. App. LEXIS 4638, at *1 (D.C. Cir. Mar. 11, 2005).  When he refused to pay, in reliance on § 1916, those courts dismissed his pleadings.

*Hamrick v. United Nations*, Civil Action No. 07-1616, challenges the requirement that Mr. Hamrick pay filing fees and also asserts a Second Amendment right for seamen to carry arms.  The initial complaint was dismissed by this Court on October 19, 2007, under Federal Rule of Civil Procedure 8, as "ambiguous and illogical" and Mr. Hamrick was given the opportunity to file an amended complaint, which he has done.  In the meantime, in that case, Mr. Hamrick filed an "Emergency [Motion] for Ex Parte Order Verifying and Validating Plaintiff's Citizen's Arrest Warrants and [Motion] for Ex Parte Order to Federal Law Enforcement Agencies to Assist the Plaintiff with the Citizen's Arrest Warrant."  Mr. Hamrick wanted the Court to authorize him to arrest various judicial officers, including the Chief Justice of the Supreme Court, for "felony Extortion Under Color of Law, 18 U.S.C. § 872 (*extortion being a predicate act of racketeering activity under the RICO Act*) of court filing fees from [him] as a seaman in violation of the Seamen's Suit law."  *See* Pl.'s Mot. for Recusal [Dkt. # 19] at 6-7 (emphasis in original).  Mr. Hamrick now "construe[s] Judge Rosemary M. Collyer's actions criminal" because his initial complaint was dismissed and his Emergency Motion mooted.  *Id*. at 6.  He argues that this Court has become

> a Principal, 18 U.S.C. § 2, to misprision of felony, 18 U.S.C. § 4, as an accessory after the fact, 18 U.S.C. § 3, and by such participation to protect other judges and court clerks in their criminal conduct[,] Judge Collyer has obstructed justice by preventing an unrepresented civil plaintiff with a civil RICO Act case acting in the capacity of a Private Attorney General prosecuting racketeering activities.

> Therefore, [Plaintiff has] legal grounds to file a Motion for
> Recusal against Judge Collyer for judicial bias in the present
> case (No. 07-1726) and in [his] other case (No. 1616).

*Id*. at 7.

The Court will rule on the claims advanced in *Hamrick v. United Nations* in that case. Any rulings entered in that case will be subject to appeal; they provide no basis for recusal. *See* 28 U.S.C. § 455(a) (a federal judge is required to "disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned"); *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). Indeed, it is well established that "any alleged partiality or appearance of partiality must result from knowledge or bias acquired outside judicial proceedings and not, as alleged here, from the court's previous rulings or decisions." *Pigford v. Johanns*, 2008 U.S. Dist. LEXIS 4931, at *13 (D.D.C. Jan. 24, 2008). There being no such evidence here, the motion for recusal will be denied.

## IV. ANALYSIS OF THE MERITS OF THIS CASE

Mr. Hamrick complains that Dr. Hoffman committed medical malpractice and fraud; that Crowley breached a contract with him and wrongfully terminated him; and that the Union breached its duty of fair representation. The Complaint against Dr. Hoffman arises from the communication to the Company, Marine Personnel, concerning Mr. Hamrick's blood pressure after the physical examination was canceled. Mr. Hamrick asserts that the cancellation constituted a waiver of the physical "for the purpose of hiring [him] on an 'as is' condition of immediate employment aboard the M/V Charleston Express due to an early sailing time." Compl. Claim (1). The Complaint against Crowley arises because Crowley allegedly "willfully and knowingly accepted

fraudulently obtained medical information and caus[ed] that information to be communicated to the Master of the M/V Charleston Express causing the Master to initiate medical procedures" that resulted in Mr. Hamrick's termination. *Id*. Claim (2). Three separate claims are lodged against the Union: breach of its duty of fair representation by "refus[ing] to intervene in the commission of Crowley's Breach of Contract," *id*. Claim (3); violation of the CBA and/or the Union's constitution and/or commission of an unfair labor practice because many Americans are obese and "shipping companies provide excessive between-meal snacks," *id.* Claim (4); and fraud, arbitrary conduct, and/or gross negligence because the Union has refused to file amicus curiae briefs "in support of [Plaintiff's] statutory right to the filing fee exemption 28 U.S.C. § 1916" and "on the seaman's right to keep and bear arms under the Second Amendment." *Id*. Claim (5). These allegations will be addressed in turn.

      **A.**    **Claims Against Dr. Hoffman**

Dr. Hoffman urges dismissal of the Complaint against him because the Court has no subject matter jurisdiction and no personal jurisdiction over him. These points are well taken and Claim (1) must be dismissed.

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). There is no federal law that provides a private right of action for medical malpractice and fraud. Such claims arise under the common law or state law and must usually be brought in state court unless the parties live in different states and the plaintiff seeks $75,000 or more in damages. *See* 28 U.S.C. § 1332. Mr. Hamrick demands $70,000 in damages, which is lower than the $75,000 threshold for federal jurisdiction. The Court, therefore, must dismiss. Dr. Hoffman also argues that

the Complaint does not allege perfect diversity. While this is technically true, the Complaint identifies the address of Mr. Hamrick (Wilburn, Arkansas), Dr. Hoffman (Norfolk, Virginia), Crowley (Jacksonville, Florida), and the Union (Camp Springs, Maryland). The Court will not insist that a *pro se* plaintiff present a perfect pleading when the diversity of the parties is evident from the face of the Complaint.

Dr. Hoffman must also be dismissed because the Court has no personal jurisdiction over him. On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of asserting a factual basis for the forum court's exercise of personal jurisdiction over the defendant. *Schutter v. Herskowitz*, No. 06-1846, 2007 U.S. Dist. LEXIS 48152, at *4 (D.D.C. July 5, 2007). Federal courts in this jurisdiction look to the law of the forum to determine the propriety of personal jurisdiction over a defendant. *Herero People's Reparations Corp. v. Deutsche Bank*, No. 01-1868, 2003 U.S. Dist. LEXIS 27086, at *22 (D.D.C. June 30, 2003). A plaintiff's jurisdictional allegations must include specific acts establishing a connection between the defendant and the forum. *Schutter*, 2007 U.S. Dist. LEXIS 48152, at *4-5. In determining jurisdiction, the Court may consider affidavits or other relevant matters outside the pleadings. *United States v. Phillip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).

As attested to in his Declaration, Dr. Hoffman is a citizen of Virginia who is licensed, practices, and maintains his only office in Virginia. *See* Richard S. Hoffman's Mot. to Dismiss, Ex. 1 (Declaration of Richard S. Hoffman ("Hoffman Decl.") ¶¶ 2-3). Dr. Hoffman's lack of business or personal connections to the District of Columbia, where the Court is located, requires the conclusion that this Court does not have personal jurisdiction over him. Moreover, there is no evidence that Dr. Hoffman has taken any action to personally avail himself of the benefits of

conducting business in the District of Columbia. The allegations against Dr. Hoffman will be dismissed pursuant to Rule 12(b)(2).

### B.     Claims Against Crowley

Mr. Hamrick takes the position that Crowley directed him to report immediately to the Charleston Express, without completing a pre-employment physical examination, and that this direction amounted to a total waiver of the physical otherwise required by the CBA and constituted an amendment to that contract. Because of this alleged waiver and contract amendment, he asserts that Crowley breached the CBA when it accepted and relied on information from Dr. Hoffman's office concerning his blood pressure. The Complaint alleges:

> Jacqueline Smith of Crowley Maritime Corporation or person or persons unknown to the Plaintiff committed a Breach of Contract and Wrongful Termination by willfully and knowingly accept[ing] fraudulently obtained medical information and causing that information to be communicated to the Master of the M/V Charleston Express causing the Master to initiate medical procedures causing the termination of employment of the Plaintiff in violation of the Waiver of the Pre-Employment Physical.

Compl. Claim (2).[4]

---

[4] In his Opposition, Mr. Hamrick states:

> The lawsuit resulted from a breach of contract by the shipping company (Crowley). Crowley waived the pre-employment physical to get [me] aboard a container ship. But because I had been at the union clinic just long enough to [have] my high blood pressure taken and discovered before the pre-employment physical was canceled the clinic notified the shipping company one hour after the ship left for Europe with me on the ship. Crowley revoked the waiver and imposed blood pressure checks. I refused the blood pressure checks and light-duty status on the basis of breach of contract. The Master eventually threatened me with a logging which would involve the U.S. Coast Guard. . . . My employment was terminated on not fit for duty status and I was flown back to the United

Crowley argues that the allegations against it must be dismissed because Mr. Hamrick has not alleged or established any enforceable contract between the Union and Crowley. This is not quite accurate: Mr. Hamrick has *alleged* that the Union and Crowley agreed to waive the physical examination so that he could sail early on the Charleston Express. He further alleges that the "waiver" amended the CBA, that it was a total waiver, and that Crowley could not rely on *any* information from Dr. Hoffman. However, these allegations misunderstand the relationships at issue. According to the Union's unrebutted statement of material facts not in dispute, the Union signed a CBA with the Company, Marine Personnel and Provisioning, Inc., not with Crowley. *See* Seafarers' Statement of Material Facts ¶ 3. It was the Company that directed Mr. Hamrick to report early to the vessel, that wanted his blood pressure monitored as he crossed the Atlantic, that directed him to see a doctor in Antwerp, and that flew him home as medically unfit.

Mr. Hamrick argues that there "are two contracts involved: (1) The contract between Crowley and the Union, and (2) The [sic] 3-party verbal agreement on the "peer head jump" [sic] involving the Waiver of Crowley's Pre-Employment Physical." Pl.'s Opp'n to Mots. to Dismiss at 3. He adds, "[i]t may very well be that Crowley had the right to breach the Waiver of their Pre-Employment Physical, terminate my employment, for their cause of liability. [sic] Fine. But because Crowley did, in fact and law breach[] their Waiver, Crowley is liable for damages." *Id*.

Mr. Hamrick has simply sued the wrong party. Crowley is neither signatory to the CBA nor a party to the alleged waiver. *See* Seafarers Statement of Material Facts ¶ 3. The

---

States from Europe.

Pl.'s Opp'n to Mots. to Dismiss at 16.

Statement of Material Facts Not in Dispute is not challenged by Mr. Hamrick and is deemed conceded. *See SEC v. Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2001). The allegations against Crowley will be dismissed.

  **C.**  **Claims Against the Seafarers**

    1. <u>Alleged Breach of the Duty of Fair Representation</u>

The Union owes its members the duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). This duty requires the Union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 n.15 (1983) (quoting *Vaca*, 386 U.S. at 177). To prevail against the Union, Mr. Hamrick must show evidence of fraud, deceitful action, or dishonest conduct, and not mere carelessness or negligence. *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299 (1971). Assuming the facts in the Complaint to be true, and drawing inferences in his favor, the Complaint allegations do not meet the necessary standard. *See generally* Compl. at 16-17 (Mr. Hamrick complains that the Union allows pre-employment physical examinations, allows the Company to obtain monitoring of Mr. Hamrick's blood pressure, allows the Company to provide between-meal snacks on board ship, and fails to support him in his other litigation).

When Mr. Hamrick complained, by e-mail from onboard the Charleston Express, that Defendant Crowley wanted to monitor his blood pressure, Union representative Georg Kenny spoke to the Company about it. When Mr. Hamrick returned from Antwerp, he instructed the Union to do nothing for him; nonetheless, Mr. Kenny attempted to address his concerns and succeeded in obtaining extra pay and benefits for Mr. Hamrick. Only after he had filed this lawsuit did Mr.

Hamrick file a contract grievance. An employee must attempt to exhaust the grievance and arbitration procedures established by a CBA before filing suit. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). An employee is only relieved of this obligation if his attempt to exhaust such remedies would be futile. *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 331 (1969). Mr. Hamrick offers no facts or argument to support a conclusion that he could not avail himself of the grievance process; in fact, he has done so and the Union is pursuing his claim. His lawsuit against the Union on a claim of an alleged breach of duty of fair representation is without merit and will be dismissed.

        2. <u>Obesity and Shipboard Snacks</u>

The Union is an exclusive bargaining agent for all "terms and conditions of employment." *See* 29 U.S.C. § 158(d) ("[T]o bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to . . . confer in good faith with respect to wages, hours, and other terms and conditions of employment . . . ."); 29 U.S.C. § 159(a) (requiring that the elected union be the exclusive representative). Without a copy of the CBA, this Court is unable to determine whether the Union has affirmatively bargained with shipping company employers for shipboard snacks or granted management the right to make its own decisions on such snacks. In any event, and assuming that there is a connection between obesity in the American public and shipboard snacks as the Complaint alleges, it is the Union's exclusive prerogative to decide whether and to what effect to engage in such bargaining. If Mr. Hamrick wishes the Union to take a stand against shipboard snacks, he should raise the issue in Union meetings and persuade the Seafarers to do so. Claim (4) will be dismissed.

### 3. Participation in Mr. Hamrick's Second Amendment Litigation

Mr. Hamrick states that he has been litigating seamen's rights for five years. *See* Pl.'s Opp'n to Mots. to Dismiss at 4. He seeks "Consequential Damages" from Crowley and the Union for the "continued opposition to my case for seamen's rights." *Id*. He adds,

> Seamen are wards of the Admiralty. Because the federal courts have dismissed all my cases for the last 5 years I have the opportunity to present a corrupt federal judicial system abandoning their wards of the Admiralty in league with shipping companies and the Union in my human rights case at the Inter-American Commission on Human Rights.

*Id*. The Complaint does not include any allegations against Crowley based on Mr. Hamrick's Second Amendment litigation. The Court will address, therefore, only the Seafarers' obligations.

From Mr. Hamrick's point of view, he is protecting the rights of seamen to bear arms and to file suits without paying filing fees. He believes that the Union has an obligation to support him in this endeavor because the Union's mission is also to protect the rights of seamen. However, the Union represents thousands of seamen on U.S.-flagged ships; it reasonably must determine how to spend its time and resources to the advantage of all members. While the Union might choose to file a brief in support of Mr. Hamrick, it has no legal obligation to do so. Any claim against the Union in its representative capacity must be based on an alleged breach of the duty of fair representation. But Mr. Hamrick offers no evidence of fraud, deceitful action or dishonest conduct by the Union. *See Amalgamated Ass'n*, 403 U.S. at 299 (1971). Therefore, Claim (5) will be dismissed.

## V.  CONCLUSION

Defendants' Motions to Dismiss [Dkt. ## 8, 9 & 10] will be granted and the Complaint will be dismissed in its entirety.  A memorializing order accompanies this Memorandum Opinion.


Date: May 6, 2008                                           /s/
                                                         ROSEMARY M. COLLYER
                                                         United States District Judge